The next case is Spahr v. Collins, appellate number 22-2787. Good afternoon, your honors. Joe Hanlon on behalf of Delaware Family Crisis therapist Amy Collins. May it please the court. Counsel, did you reserve any time for rebuttal? Three minutes, your honor, please.  Thank you, your honor. This court in Mamara observed, caseworkers investigating allegations of child abuse often must make difficult decisions based on imperfect information. Particularly when deciding whether to separate parent and child, a caseworker must weigh the rights of the parent against the rights of the child and the risk of abuse. Go ahead. Go ahead. We're going to get to the great part of the court. I suspect we're going to ask the exact same question. What exactly is the right here? What's the clearly established right here? There is none, your honor. And that's what we're appealing. Well, what is the right that the plaintiff contends was violated? We recognize your position. Nothing is clearly established, but what is the right? That was murky below, your honor. And the focus of the case, which I didn't work on at the trial level, was substantive due process. And the district court in the August 26, 2022 order said there was not enough evidence to go forward on a substantive due process claim. As to the procedural due process aspect of it, the court, as the court's aware, held that Croft clearly established a procedural due process right. Basically, in this case, not to have a caseworker like Amy Collins offer a child safety plan. Let me just interrupt you. That's not what the court said. And maybe that might be something we need to talk about. What the court actually said was the right of a parent, quote, to not be coerced to relinquish custody of their minor children without due process of law. That's how the right was expressed. And what you're saying to us is I think you're about ready to articulate what you think the right that was actually being asserted. Yes, Judge Schwartz. The right that was really at issue was a substantive due process right. If there was a federal right at all in this issue in January of 2018 between the plaintiffs and this DFS. DFS, essentially, wasn't just Ms. Collins that was involved in a civil issue. She was primarily involved and is obviously the only appellant before the court. Then would it be fair to say that the right at issue, put aside whether it falls into the procedural or substantive bucket, but the right at issue, given this context, and I think you were about to say what you thought the district court was addressing, was the following. A parent presented with a child safety agreement has the right to review that agreement without being faced with the threat the child would be placed in foster care unless the agreement is signed. Do you agree that's the right that the plaintiff was actually trying to assert? Your Honor, the right that if you can't be coerced into signing a safety agreement, there's not a Third Circuit case that establishes that right. We're not talking about clearly whether it's established or not. I'm asking you what is your understanding of the right your adversary is asserting was violated, not whether it was clearly established as a separate issue. And so I was reciting to you, is that the right? Because what we see in the record is Ms. Spark contending that she was threatened or coerced because she was told if she doesn't sign the child safety agreement, the child would be placed in foster care. She also made some comments about it was dark and she was in the driveway and there's a factual dispute about that. But the core issue is that point as I understand it. Some facts, Your Honor, that had nothing to do with Ms. Collins. It wasn't, she wasn't responsible for the, it being 530 and it being dark and them being in the driveway at the time. But that being that, put that aside, Your Honor. Yes, on page nine of the answering brief, the appellees make it clear. They say, and I think this is a pretty telling quote. Collins' brief argues that she is entitled to qualified immunity because it is not clearly established, I'm going to paraphrase, that the safety agreement as an alternative to seek an emergency custody through a state law process violated procedural due process. Appellees agree. And then they say, unfortunately for Collins and for the decision below, that's not the right. It's the right not to be coerced into this agreement. There's no Third Circuit case law that says that that is a procedural due process right. So let me just walk through this. I understand Delaware law, you can have a pre-deprivation hearing or in emergency situations, a very prompt post-deprivation hearing. Correct. Either way, sooner or later, there's going to be a hearing, right? That's the essence of procedural due process. You have noticed and you have a meaningful opportunity to be heard at a meaningful time. But the word meaningful is used another time to describe the standard too. But that's it. At bottom, it's the ability to get a hearing. And by signing this child safety agreement, there was never a hearing. And the allegation is that there was coercion into signing the child safety plan. So the procedural due process right, as I understand it, is a right to process. We know that the right involves notice and a meaningful opportunity to be heard. Collins, through her actions, alleged actions, it's a disputed fact, coerced, allegedly, the signing of that agreement so that that process, that last process, the eventual hearing, either pre or post, never happened. Isn't that the right that's taken away, just the right to the hearing, that because there was a signing of a document, that never happened? And isn't that a pretty run-of-the-mill procedural due process case? As a follow-up, and was that what was argued by the plaintiff? Judge Schwartz, I think that was kind of what the plaintiff has argued. But I think I get a more definite answer to Judge Phipps' question on the process. So, in fact, in this case, the actual record, undisputed, 21 days later, the process did kick in. They made another attempt to go to the police department, get their children returned. And that was after the child safety agreement was revoked. So there's a claim for this period of time. Twenty-one days. But while that child safety agreement was in place, I mean, it wasn't a long, in terms of duration of days, weeks period of time, but it was longer than would have otherwise been permitted under Delaware law, had the agreement not been signed. Do you think that's right? But this record was undisputed, that that child safety agreement could have been revoked the next minute it was signed. The record, and you can see the e-mails. That, as a matter of law, is true. The question is, when you get coercion and a person believes that revoking it will automatically send their child to have foster care, then I don't know that that legal right is at its apogee, because a person believes that exercising it comes with a consequence that they don't want to. So, Your Honor, two answers to that. One is a legal answer. There is no Third Circuit case that says coercing a child safety agreement under this, facts anywhere similar to this case, is a violation of a procedural due process right. There's no case law. Croft is the only case that comes close to saying that. And why aren't we bound by Croft? Croft is a footnote. Your Honor, the entire case had to deal with substantive due process. So people like Amy Collins, case workers throughout the Third Circuit's jurisdiction, reading the Croft decision, they read that, they determine, okay, if there's no reasonable suspicion of abuse or neglect of a child, and you yourself don't believe that the abuse occurred, and the child corroborates the dad, Dr. Croft's story, and the mom corroborates it, and you still tell that dad he has to leave or you will physically put the kids in foster care that night, that that could be a violation of substantive due process, that your substantive decision. Contrast the facts here, Your Honor. We have an anonymous tip that is not so anonymous if you read it, and it's at the beginning of Appendix 3, and I won't get into the details, but I implore the Court to read the Code's case notes. I assure you the three of us haven't. Not an anonymous tip, right? What does Ms. Collins do? She interviews numerous parties, including two police departments tied to the domestic violence. Most importantly, she interviews the child. The child corroborates the story. I'm afraid to go home. Okay, so she has this information. She interviews plaintiff's mother. She interviews, and the names get very confusing in this case, and I can answer. There's three couples with the same first name. It makes it very confusing. She does have parties with the same first name. And these are all in the case notes. She goes through several interviews. She determines there's a problem here. We totally accept that. The question is, how do you get around Croft? And I believe what you were trying to tell the Court is that the observation in the footnote that says, conveying a child safety agreement with the statement, and if you don't sign it, the child will be placed in foster care is blatantly coercive. Your position is, I'll use some legalese. That's dicta because it wasn't critical to the analytical foundation of the whole thing in the case, which was you can't take a kid unless you have objectively reasonable suspicion that the child's at risk if they remain in the home. Am I correct? Judge Schwartz, you answered it better than me, but I can add a little bit to that. Let's look at the footnote. Quote, we note here only that the policy of removing the suspected parent, not an issue in our case, from the family home during the pendency of child abuse investigations, absent procedural safeguards, raises a procedural due process issue. That's it. That's the whole footnote. That does not put caseworkers on notice. You're talking about the first footnote. Go ahead. You're talking about two different footnotes. She's referring to footnote one, which talks about what is coercion. You're talking about the footnote that raises are there due process issues. So she's asking you about, so look at footnote one at Croft. So footnote three is the footnote that the trial judge cited. Well, I'm asking about footnote one. She's asking about footnote one. All right, so a different footnote. And when you read it, and you can read it to yourself, read it out loud, however you'd like. All right. All right, defendants, I don't know if your Honor wants me to read it to the audience, but defendants repeatedly characterize Croft's decision to leave as voluntary. This notion we explicitly reject, the threats that Croft leave his home. Yeah, I mean, so again, there's no, this isn't a discussion of procedural due process. There's no law cited. The entirety of the Croft decision is a substantive due process case. And had, you know, we could be back here in a year or so, or maybe months, on a substantive due process claim. But that's not before the court. And I suggest that that record will be even stronger for Ms. Collins on a substantive due process case. And looking at her conduct under the applicable standard and the case law. By the way, I'd be remiss if I didn't mention Memorial. If there was any doubt about whether Croft established anything for Ms. Collins as a matter of procedural due process, this court's 2016 published decision in Memorial erased any doubt on that. That case, again, was a substantive due process case. But the facts were remarkably similar. You had domestic violence. You had a caseworker who actually removed the child from the mother with no court order, no safety plan. Memorial reversed a denial of a motion to dismiss based on qualified immunity. A pretty remarkable decision. That's two years before the conduct in this case. And then Memorial also addressed Croft and said, well, Croft is, the facts are just so different. Croft's facts were striking. And I think there were two really important facts that came out of Croft that I think is helpful here. The county had a policy that if a parent was accused of sexual abuse, the parent had to disprove it beyond all reasonable doubt or any conceivable basis. There was a policy. And then there was the worker's testimony. He said, I didn't even really believe that there was abuse here, but I told him he had to leave that night or the kid was going to foster care. So really that was what was driving the decision in Croft. Again, it was a substantive due process case. Remarkably different facts here. At bottom line, Judge Schwartz, there isn't case law that says court, you know, talking someone into a child safety plan under threats of foster care is a violation of a procedural due process right. I have a couple of questions that follow up on my colleague, Judge Phipps, and then my colleagues may have some additional questions. First, what is the legal authority for even using these child safety agreements? So there isn't a statute or regulation. And Judge Posner in the Dewey decision from the Seventh Circuit said that it's not surprising because these are voluntary things that you can enter into to obviate the need for court intervention. But the spirit of that, the spirit of some of the statutory authority, is to make sure the child is a safe place to go. And the agency has come up with a way to basically have parental choice or at least participation in where the kid goes. Am I correct? Correct. And 13 Delco 2512 and Family Court Rule 212 form the mechanisms, Judge Phipps, that the caseworker would pursue. And I'd like to follow up with Judge Phipps' question about process. What happens if the parent refuses to sign the agreement? Then they test the process. And does the caseworker feel that they have enough evidence to call the hotline and get maybe an ex parte order immediate with a petition the next day and a hearing within 10 days? Or do they go the normal process, notice an opportunity to be heard, adjudicatory hearing, and that process gets sent? And if the parent revokes at any point, a minute later, 21 days later, what is the process the person is in? They can go get their kids. Pardon me? They can go get their kids. There's no court order. There's no penalty other than you're taking the risk. So in this case, though, the agreement said if there's an effort to try to get the kids, the persons who have custody of those children are supposed to call 911. Right. And then there's going to be interaction. That's exactly what happened 21 days later. After hours, Amy Collins wasn't on call. And Ms. Powell, who was a defendant, after-hours person, she handles the case. She's looking at the notes. She makes the call to the court. And when the child – I have just one more question. When the child's removed and placed in the hands of these individuals who are selected pursuant to this agreement, is the child still considered under DCYS's supervision? Is it in their custody? Is it neither? Is it both? What is the status of the DCYS vis-à-vis the child who is living with somebody else under the terms of that agreement? So the state does not have legal custody, for sure, Your Honor. So it is a negotiated arrangement. If the parents want to break that agreement or they want to revoke it, DSCYF or DFS, the division in this case, has to make a decision. Judge Phipps, I see you have a question. Your exchange with Judge Schwartz prompted some thoughts in my head, which is we've got this situation where child safety agreements are just really absent from Delaware statutory or regulatory law. They might be permitted, maybe because they're not prohibited, but they just aren't there. Delaware seems to do a pretty good job in terms of providing process normally. It says normally it's a pre-deprivation hearing, but in emergency situations you do. But when I think about Matthews v. Eldridge, kind of, you know, the procedural due process case, the first factor is, you know, loss of right to the private person. But the second factor is risk of error. And so if it's possible that child safety agreements could be coerced with threats of 911, threats of foster parties, all this stuff, shouldn't there be then some procedure on the back end, like a post-child safety agreement hearing in court to ensure that that was voluntarily signed and not coercive since they have such strong downstream effects? Well, the record actually supports that an amended safety plan was attempted, and Ms. Farr didn't want to sign it. No one signed it. There was supposed to be a meeting the next day to go over the safety plan. But I'm talking just in theory. Like, in theory, what Matthews says is if you've got a high risk of error, you know, bad decision, the state needs to throw more process at it. And what I'm saying is if we recognize that these child safety agreements can be written in very maybe draconian and strict terms, doesn't it seem that it makes sense on the back end to have just a court peek at that and make sure that the people, the signatories to it, and in this case I don't think both parents signed it even, which is a little interesting to me as well. But that's the sort of thing that a court would instantly get on to and say, hey, we've got two parents here. One of you signed it. You both lost custody. Doesn't it make sense in terms of Matthews v. Eldridge if Delaware is going, its statutes are nice. It says you get pre- and post-deprivation hearing. It's non-statutory law, the use of these child safety plans and agreements, seem to be lawless in terms of the process that's provided. And I don't mean lawless, but could potentially be abused. So don't you think that as a matter of procedural due process, Delaware needs to set up some sort of back end hearing since the risk of error could be so high, like only one of two parents signing? See, I'm well over my time. I'll try to be as succinct as I can. Okay, great, because I have several responses to that. As long as it's responsive to the answer. So first of all, Matthews v. Eldridge and its progeny procedural due process, you are typically looking at a systemic problem. Is there a risk of error? Does the state get it wrong 50% of the time or 20% of the time, some unacceptable amount? No record in this case of that. The record is solely focused on this one, this interaction, right? There's no discovery. There's certainly nothing on appeal that suggests anything about the problem with the process in general, right? And that's typically what courts are looking at with procedural due process. Second of all, revocation the next day. If your honors have any question about what was being understood by the plaintiffs, you need look no further than the Sean Lynn emails, which is the emails from the attorney back and forth to Ms. Spahr where they talk about, hey, what can we do? Well, we could revoke. We could go get the kids. But, you know, that may put you in a worse position, perhaps because maybe there is a problem and DFS would be successful if they had to go to the court. In fact, the record here tells us two things. One, the duration of this agreement was 30 days. Second, it tells us multiple things. Second, we know that it was amended. Third, we know it was revoked. Fourth, we know that when the agency made its application to the appropriate judicial officer, he found no basis to having children removed from the parents.  And ultimately, that does not mean they got it wrong in this case. That does not necessarily mean Ms. Collins acted inappropriately on her information. But the process occurred here pretty promptly.  Right. And I just want to correct. It was never actually revoked in the sense that the attorney said we hereby revoke. They went to the police department. They were going to just take the kids. And they called DFS, DFS then made a call with an after-hours worker. And she, yes, the judge said there's not enough here for emergency taking of kids. They didn't pursue the case further after speaking with counsel for DFS. We have nothing to do with that. But again, the process could have been revoked the next day. DFS would have had to make a decision at that point. That never happened. If you look at the emails between Sean Lynn and the plaintiff, that could be risky. They could get the kids, and the kids could go to foster care. That's a potential problem. Because maybe there is evidence of actual domestic violence with the kids in the middle. So I'm happy to answer any other questions that Your Honors may have. But I did go well over my allotted time. Okay. All right, counsel, we'll hear from you. Thank you very much. Thanks. Good afternoon, Your Honors. Ron Poliquin here on behalf of Ms. Spahr and Ms. Cain. I'm sure you have a lot of things that you want to hit. But I will tell you, I have one that I want to know about first. Sure. First, as I understand it, your position is, and you heard us asking a lot of questions about what your position is. Actually, let me not tell you what I understand. What is your position? What is the clearly established right? That you can't coerce parents to give up their children under threat that they're going to take them for foster care. And the precise coercion here is the threat that they're going to go to foster care? That's the coercion? That's the coercion. Okay. That sounds like a substantive process, right? I mean, a procedural due process, right, is I didn't get the notice. I didn't get an opportunity to be heard. It doesn't deal with the deprivation. It deals with the lack of process. And so what you just said, you coerced me on my children. Okay, that's a substantive loss. I thought you would try to tie, since we're here on a procedural due process thing, the coercion to a loss of process. It is. And as stated by this court in McCurdy, the procedural due process requires rigorous adherence to procedural safeguards whenever the state seeks to alter, terminate, or suspend a parent's right to the custody of their minor children. Obviously, there's a disagreement that's not before the court today regarding the substantive due process rights. But as far as what was established in Croft and also McCurdy, and as stated, I would point to the language in the Isbell case, the Third Circuit put defendants on notice in Croft that coercing parents to sign over their children under the threat that the government would otherwise take custody raises procedural due process concerns. And tell me how that is not dicta in Croft. When Croft dealt with the holding in Croft has to do with whether you can remove a child without objectively reasonable suspicion the child remaining at that home would be at risk. I think, Your Honor, the reason why this court put that in Croft is to put individuals on notice. That is a due process procedural issue. I also think it's consistent with McCurdy regarding procedural due process safeguards. McCurdy was different, right? That was an adult child, yes? Am I right? Excuse me, I'm sorry. Was it McCurdy about an adult child? Yes, Your Honor, but it was also about procedural safeguards regarding due process that has to be met. Did you have them here? The client was told? We know from the representation from counsel that the kids were going to be taken, whether the agreement was signed or not, because the official believed they had reasonable suspicion. I think that's a disputed fact. Absolutely, Your Honor.  That's 20. Let's assume, for the purposes of this question, that there was objectively reasonable suspicion. Just assume with me for that purpose. I know you disagree about that, but assume that that's established. Tell me how the parents were deprived of due process here when they were told the legal consequences of what was going to happen to a child. The child was going to be removed whether that agreement was signed or not. That's not... Let me just finish, counsel. That is what the law would allow that official to do under emergent circumstances. So how can that be coercive? That's not what happened here. What happened? What happened here wasn't, hey, if you don't sign over on the safety agreement, we're going to go get a court order. No, I didn't say that. What I said was exactly what I understood your brief to be. She was told, the parent was told, if you don't sign, the kids are going to be placed in foster care. Correct? That's what she says in her deposition. Yes, Your Honor, I agree with that. Right? And so that child was going to be removed whether she agreed to where the kid was going to be placed or not. I think that cuts off the whole purpose of due process is that you have the court puts in protections for people like the mother and the father... I agree with you. ...to ensure that it's not arbitrary that this court... And what happened here is exactly the problem with that process being subverted. So what process... So, I mean, in this world, like, you're saying there's a procedural due process problem. And usually that means that some process was missing. And so what process are you... I mean, this is a way of just kind of getting your case. What process was missing here? The court order. The fact that you can't... So there should have been a court order, what, before the child safety agreement, after the child safety agreement? When should this court order have come about? It comes in that, okay, child worker comes to the parents. The child worker is concerned. Assuming that is the situation, parents say, no, I don't... I'm not just giving up my children. We have rights, too. They have to follow the procedural due process of going to court to get a court order. But if they sign, it can't... I mean, there's this notion in the Fourth Amendment context about consent to search. We don't require you go to court before you search someone's trunk or their house or something like that. So why can't it be that a person, the caseworker just shows up and says, hey, I don't want to go to court if you don't want to go to court. You just want to sign? And the person says, sure, I'm willing to forego all the process in the world, just like in the Fourth Amendment context. Some people say, sure, I'm willing to forego all my Fourth Amendment rights. Search my trunk. Search my ad. I think there is a coercion aspect of this that the court has to be concerned about. And that's what Croft was concerned about, is that coercion. Specifically, you're talking about the importance of footnotes. That first footnote's important. The state didn't seem to think that footnote's important. It's important because it talks about coercion of parents. When a parent is put in that position, that you either give up your children on a dark, cold driveway with no time to read over this agreement, or your children are going to foster care, the court determined, and this court, the lower court determined, there's a factual dispute of whether that's coercion or not. I want to make sure I understand exactly the ramifications of what you're asking us to do. So assume with me that Ms. Collins said, if you don't agree to the child safety plan, I'm going to petition the court, and if the court grants my petition, I'm taking your children tonight and putting them in foster care. Is that coercive? No. So the issue here, it comes down to skipping from I'm going to petition the court, and if the court. That's the problem.  I think that's when you folks in robes are important. You protect a layer of protection for people against the state or a state officer, in this case a government worker. But what if there's an emergency and there's not enough time to go? So you're saying, I know you're disagreeing with the facts, because you're asking us to hold a principle of law. You're asking us to say, does a parent have a right not to have a chance to review an agreement without the threat of the child being taken into foster care? I think the term coercion is important in that context. Well, threat, coercion, we're trying to articulate it right. Coercion is a legal concept in some ways. And I'm trying to keep it plain language so that officials who are carrying this out understand what the bounds are there. But the law in Delaware allows, as Judge Phipps indicated, the emergent removal of a child before you can get to court. You still have to have a court order before you move a child from the home. A child that police could go in, see a child in extremis, and can't remove that child without a court order? I think that's a different situation. But you're asking us to set a principle of law. And I'm pivoting off of what my colleague said. She said, had the officer said to your client, otherwise I'm going to petition the court, that would have been okay. But what if the fact pattern is it was emergent? The law gives that officer the right to take emergent action and then go to a judge, correct? Yes, that's true. Okay, so if that's the case, and then I'll give it right over to you, Judge Phipps. If that's the case, how is it a procedural or due process, regardless of what bucket you put in, problem for some public official to tell an individual the legal consequences, the permissible legal consequences of a decision, much like that's done in criminal cases, during plea agreements, you tell defendants the maximum penalties. It's a truthful statement of a consequence. How is that coercive, even if it's uncomfortable? Case workers do not go in and just take children from their homes. I mean, you would have to get a police. Police were not involved in here. Law enforcement was involved here. So I would – and I know – You thought the police weren't there? I thought the police were there, too. The police were not there that night, no. I thought that's how she gained entrance to the house, was with the police. They might have been there earlier that day, but they were not there at the time this all happened. No, that's not – the police were not – I thought Ms. Carr said in the car. The police – I'm almost 100 percent sure the police were not there when the parental rights agreement was signed, at the time of the signing of the agreement. They were there – they might have been there earlier in the day, but they were not there. I thought she came because she was told that there was a dog. Remember, there was a whole conversation about there being a dog and there might be a dog bite, and that's why the police accompanied her there? I think that happened – that was earlier in the day. This was later in the night. The police were not present on that scene. So can I turn back to this notion of kind of hearing? It strikes me that there is the possibility in emergency situations to take physical custody of a child without a court order. But how long afterwards do you have to go to court for that? Do you get like 60 days to go to court? Do you get six days? Is it the next morning? How often? Are you asking hypothetically or are you asking under the state law? Under state law, yeah. I think it's right away. It's almost right away. And so it seems to me that then what your case might be is even if this was an emergency taking, I would have expected the hearing the next day. Correct. And what you're saying is the procedural due process right that you're missing was there was no hearing the next day. Is that right? Am I tracing your case? That's correct, Your Honor. One of the issues here, and I want to correct my counsel because he's not part of the underlying discovery process and record, is that there was attempts to revoke that agreement throughout this process, both by the father and mother, and without this court order. And there's also allegations that the family caseworker had lied to the police saying there was a court order involved when there was none. And the police are confused because they see parent safety agreement and they might not know what exactly it means. So the whole process is completely subverted. And actually the parents are in a worse position because she was coerced into signing this parental agreement than if she didn't sign it where they would have been entitled to certain hearing rights. Here you have 21 days, and we talk about that very flippantly. And I'm not attacking the court. I'm saying 21 days without your children. And ultimately at the end of that 21 days, it says, oh, you didn't have enough evidence. Here's your kids back. But that was the state didn't decide when the hearing was. That was when the parents made a request to modify the terms of the arrangement. There was a request throughout this process to retract this. So the idea that, oh, they could just retract it the next day, that's not correct. That's the problem with the – Did they try to retract it? They tried to retract this. Can you point me where in the appendix that was? I don't have that on me, Your Honor. Can you represent to this panel that there is record evidence that the next day she tried to revoke? There should be record. There was – I believe it's the deposition that she tried to revoke this parental. I don't know if the very next day – Conversations with her attorney, but that she tried to revoke with someone in the state. Correct. Yeah, and also the father trying to make calls to the – and the police are kind of like in this confused position because they're dealing with the family services worker. And so they almost become in a worse position because they signed the safety agreement. So that – I mean, that's one of the problems with – Can I ask you a question? Ms. Bonker? About the facts. And I'm thinking about the deposition here. So I asked you about, you know, trying to understand exactly what the coercion was here. And part of the issue was the threat of the children going to foster care without the understanding that they'd have to be a petition first to go to foster care. And on page 76 of Ms. Farr's deposition in its appendix A-217, Ms. Farr is testifying, and Ms. Farr says, she said, if I didn't sign it, I was told if I did not sign it that my children would be placed in foster care. She said they would go to the court, get an order, and my children would go to foster care. What I think the court determined after reading all that testimony is that there was – that there was an issue as to whether she coerced Farr to sign the child safety agreement. Judge, I think my colleague is asking you, do you agree that your client said that the caseworker specifically said they would go to court to get an order and the children would go to foster care, making reference to the type of petition Judge Phipps was referring to? I don't know. This isn't the only time. There are a couple of references to going to court. I'm not doubting that's part of the deposition, but there are other parts of the deposition. I mean, so there are certain parts of the deposition to where she testifies that she was – she had to give up the children that night or the children would go to foster care. So I think it's a dispute of fact, not appropriate for this – for the panel here today. Your Honor, I think going to – this is all – well, it's just a footnote. It's a footnote. Your Honor, you know, footnotes – Excuse me. We just identified where it was. We didn't just say it was just a footnote. Understood. We just identified it was footnote one. If I'm going to just say this to finish out my presentation is that, you know, judges write opinions not as private citizens but as public officers vested with constitutional authority to publish the force of law. That means that footnote at the very least represents what those judges, this circuit, believed the state of the law was at that time. You can't get away from the fact that those aren't citation – that's not a citation footnote. Let me ask you a question about that. And I'm trying to remember if it was Dupuis or Smith. I believe it was Dupuis. The court there was talking about coercion, and it sort of made this – had this discussion that essentially – it didn't say coercion is not allowed, but what it says is improper or illegal coercion, that is when there is no legal basis for it. And it talked about our Croft decision and basically said, listen, you can't just look at a footnote out of context. You have to look at the whole context of that case. And in that case, there was no basis to actually suspect any abuse. That makes sense. If there's no basis to suspect abuse, you can't have a threat like that. But why didn't – shouldn't we read that case to also understand if there is a basis to suspect abuse? And I know that you dispute that, but go with me. If there is a reasonable basis, a reasonable suspicion that there is abuse, that you can inform a person that they – that there will be a petition, they will lose their children to foster care. I think in certain situations, depending on the situation, there could be – and certainly there could be situations that say, hey, we're going to sign this safety-paced agreement. If you don't sign it, this is what we're going to do. That's not how the facts are in this case as far as the coercion example. So I don't think that would apply here, and I don't think that's what Croft was talking about. Croft was talking about a situation where a parent is coerced into giving up their children by a government official under the threat that they'll immediately go into foster care. But isn't the issue in Croft basically that the official had no basis to take the child? That is, you have these times when, you know, we've been discussing them today, when there are emergency circumstances and you can remove the children without a court order. And then you have these times when you can call and get an emergency court order, when, you know, there's reasonable suspicion that there is abuse. Wasn't the issue in Croft that none of that was the case? Well, I think that – So you have the threat when none of that's the case. There was definitely issues with the proof of evidence of the abuse there, which I think is here. And I think in the lower court here, what it determined is that there was a dispute of fact of coercion. And I don't think this court can dispute – can rewrite that decision by the lower court saying, hey, the lower court said there was at least a very – at the minimum, a dispute of fact as to the coercion. But that's not – you know, I think the court here has to accept the fact that that dispute of fact actually existed. So with that being said, Your Honors, I would ask the court affirm the lower court's position. I appreciate the time. Thank you. Thank you, Counsel. Your Honor, may I be allowed to address a couple points?  Thank you. Following up on Judge Phipps' question about Matthews v. Eldridge and the risk of error, this is not the case to be concerned about running afoul of that test. If the court looks at A427 of the appendix for a police report on March 1st, 2018, on the son's first birthday, an incident occurred. So this is not the case to be concerned about running afoul of Matthews v. Eldridge. If this court – Croft did not establish a procedural due process right with respect to coercion. If there is coercion, Judge Schwartz, I think you were picking up on this. It could be a substantive due process case. One of the problems with concluding otherwise among others is what's the process that's applicable? Does it have to be light? Can it not be cold day? Whose responsibility is it that they were in the driveway and not invited into the home? It just doesn't make any sense as a procedural due process claim. Before a child can be removed, there should be some process. Yes. And what should that process be? And that process should be a negotiation of having a daughter go with her natural father, potentially, as had happened in this case, and an infant son go with the maternal or grandparent, as happened in this case. That's the placement. That's not the process. And if that doesn't work out, call the court. But process in the procedural due process context usually involves review before an impartial tribunal. And Croft Footnote 3 basically says, I mean, at one level, it's a really modest footnote. I mean, you can say it's looking out and seeing the ocean. But at another level, it's modest. It says, hey, look, all we're saying is if you take someone out of the home without any process, that seems to be a procedural due process problem. And so the question here is you have children coming out of the home and there was no trip to court. The next day or the day after, there's a trip to court 21 days later. But the question, at least for the legal right, is as long as there was no process, when process might have been due, doesn't Croft say, hey, there was no process. That looks to be a procedural due process. If there was some process, then I could say people saying, oh, Croft is ambiguous, because it only said the most modest thing ever. The complete absence of process is a procedural due process, right? And I guess what I'm asking is where was the trip to the tribunal for the first three days, the first seven days? And if there wasn't, when it would have otherwise been due in an emergency extraction, isn't there a procedural due process claim clearly established for at least that small period? Small period. Not at all, Your Honor. Not at all. And the reason is it could have been revoked the next day. There would have been a process in play. DFS would have had to make a decision, as happened on February 8th, right? So I got to correct the record on one thing. There is nothing in this record, and I scoured this appellate record. I might not have been involved in the trial court for two years, but I'm very familiar with this record. The appellate answering brief cites A444 and A455 for the notion that Ms. Spahr revoked the agreement the next day. That is not accurate if you look at those two cites. She's talking about what happened at the end. Let me just push back on that, though, because your antidote to the dispute of fact about coercion seems to be the right of revocation, right? So you say even if there was coercion, so what? There was the right of revocation. And I guess what I'm saying is how good a right is that if a person really is coerced? If a person is coerced, they aren't making a voluntary choice. They aren't appreciating all their legal options to their fullest extent. And so they might not want to exercise their right of revocation to the fullest extent. So that might not be the strongest antidote. Well, I just, for this case, Your Honor, there's just not clearly established law putting Amy Collins on notice that what she did was improper, let alone unconstitutional. Do you think that there's clearly established law that some process has to be done before a child is removed from the home? We have not been made aware of any throughout this case. What about footnote three? Footnote one, which we were focusing on earlier, is all about coercion. Footnote three, though, it says if you remove, I think it's a parent in that case. I might be wrong. You're right. But remove a person from the home without any process, which I interpret as going before an impartial tribunal, then there's a procedural due process. And I guess what I'm asking is for as long as there was no appearance before a tribunal when it would have otherwise been due, isn't that a procedural due process? That might not be the longest procedural due process claim ever. It might be a six-day or ten-day procedural due process claim. But at least as long as no process was required, isn't Crawfoot note three kind of, you know, Polaris? It just raises an issue. That's all this Court said. It raises a procedural due process issue and left a whole bunch of questions open. And if this Court does not reverse on this case, on this claim, it really runs the risk, at least Delaware DFS, using these safety agreements, because you're always going to have the coercion of foster care. Right? That's the alternative. Whether you say we're going to file for foster care or whether we're going to put the kids in foster care, there's always going to be that coercion. I will cite Judge Schwartz. You did pick up on some of the deposition testimony. I would also ask the Court to look to A217, A218 for Amy Spahr saying that Collins said that she would go to court. And then Matt Cain made this crystal clear, the other plaintiff, A78, A91, A241, all about they said they would file for foster care. So we don't have a record. But the plaintiff may have said elsewhere in her deposition that they said safety agreement or foster care. It doesn't negate the fact that she said several other times, acknowledged several other times in her deposition that they said they would file for foster care. She was paraphrased in other testimonies. So it's not a disputed fact on this. But even if you conclude, all right, we have to give the plaintiff all benefits of the doubt in this standard that Collins actually said safety agreement or foster care, there still isn't clearly established law that that's a procedural due process right violation. There just isn't. If anything, it's a substantive due process claim, which we may be back to the Court on that at some point. I miss you. Judge Michael Lewis. All right, counsel. Thank you very much, Your Honors. I appreciate the Court's time. Counsel, we thank you both for your very helpful arguments. And the Court will take them.